STATE, Respondent, vs. STELLOH, Appellant.

*May 9—June 3, 1952.*

*John R. Craite,* attorney, and *Roland J. Steinle, Jr.,* of counsel, both of Milwaukee, for the appellant.

For the respondent there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and *William J. McCauley,* district attorney of Milwaukee

county, and *Harold J. McGrath,* special assistant district attorney, and oral argument by *Mr. Platz.*

GEHL, J.    If it were necessary on this appeal to determine whether at the time of the trial Schlesinger was or was not insane we might, without too great difficulty, be able to say that the record discloses that he was. If that fact had been made to appear upon the offer of his testimony and it had been received against objection, and if an appeal had been taken, it does not necessarily follow that a reversal would have been compelled. It would still have been necessary to determine upon such appeal whether there was other proof ample to sustain the conviction. If the record had disclosed that there.was, the admission of the testimony would necessarily have been held to be harmless. *Watson v. State,* 195 Wis. 166, 217 N. W. 653.

We see no reason for the application of a different rule because the matter is now presented upon a petition for a writ of error *coram nobis* instead of having been raised upon an appeal.

The defendant and Schlesinger were arrested upon the complaint of one Harry Sweed who operated a vegetable store. He testified that he left his store at about 9:15 on the evening of June 4, 1943, for the purpose of depositing some cash and checks in a bank located on the corner of Twelfth and Vliet streets in Milwaukee. When he reached the bank two men approached him. The taller one "stuck a gun in his ribs" and told him to raise his hands. As he gave him the money the shorter man hit him and they ran away. He described the gun as being of a black bluish color. At the trial he identified the defendants as being the men, and Stelloh as being the one with the gun. Upon cross-examination his attention was called to his testimony given at the preliminary examination where he had also testified that one of the defendants had a gun and stuck it in his ribs. He "got a pretty good look at both the men" during the

robbery. Some short time after the robbery he was called to the police station and there recognized the two defendants as the offenders.

Kenneth Pergande, a cab driver, testified that on the evening in question while his cab was stopped by a traffic signal he saw two men rush a person against the wall of the bank. He saw the smaller man strike Sweed and leave the scene. They crossed the street ahead of his cab. He identified the two defendants then in the courtroom as being the two assailants. Three or four weeks after the robbery he identified the defendants at the police station as the offenders. He did not see a gun in the hands of either defendant.

Louis Dieden, a detective sergeant, questioned Schlesinger in the presence of Stelloh. Schlesinger admitted that he had committed the offense with Stelloh's participation, and that they were armed. To Dieden's inquiry of Stelloh as to whether the story told by Schlesinger was true Stelloh replied that he had nothing to say. He did not deny the story. Several times between the arrest and the trial Dieden talked to Stelloh about the robbery but received no response except that Stelloh had nothing to say. Oscar Tschury, a detective, gave testimony similar to that of Dieden.

This testimony, even without that of Schlesinger, was sufficient to support the conviction. It afforded sufficient proof of identity, that the defendants were armed, and that they assaulted Sweed and took his property.

Our conclusion makes it unnecessary to determine whether if the testimony of Schlesinger had been improperly received and without it there could have been no conviction, the writ of error *coram nobis* would be available to defendant.

*By the Court.*—Order affirmed.

BROWN, J., took no part.